Marri Derby, State Bar Number 107209
Law Office of Marri Derby, APC
23 Corporate Plaza, Ste. 150
Newport Beach, CA 92660
marri@marriderbylaw.com
Phone: (949) 478-5084
Fax: (949) 608-7034

Joel Furman, State Bar Number 282222
Law Office of Joel Furman
1432 Edinger Ave. Ste. 240
Tustin, CA 92780
Joelfurmanlaw@gmail.com
Phone: (949) 887-2397


Attorneys for Defendant Michael Lerma


United States District Court

For The Central District of California

| | |
|---|---|
| United States of America, | ) Case No 18 CR 172-GW |
| Plaintiff, | ) |
| | ) **DEFENDANT LERMA'S MOTION** |
| | ) **FOR ACQUITTAL; NEW TRIAL** |
| v. | ) **PURSUANT TO FED. RULES 29 AND** |
| | ) **33; DECLARATION; EXHIBITS** |
| Michael Lerma, | ) |
| Defendant. | ) |
| | ) |
| | ) |
| | ) |
| | ) |


TO THE HONORABLE GEORGE WU, CENTRAL DISTRICT JUDGE

AND THE UNITED STATES ATTORNEY'S OFFICE:


PLEASE TAKE NOTICE THAT defendant MICHAEL LERMA, by and

through counsels of record Marri Derby and Joel Furman, moves for a

judgment of acquittal or in the alternative, a new trial.

This motion is based on the Memorandum of Points and Authorities, Exhibits, Declarations, and any other evidence that may be presented at the hearing.

Dated: September 22, 2025                    Respectfully Submitted,


                                             _____/s/ Marri Derby_____
                                             Marri Derby
                                             Joel Furman
                                             Attorneys for Michael Lerma

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Following a jury trial, Mr. Lerma (Lerma) was convicted of RICO Conspiracy by engaging in the crime of murder, extortion and drug trafficking (Count 1); Aiding and Abetting first degree murder (Count 7); First Degree murder within the special maritime jurisdiction (Count 8); and, Drug Trafficking Conspiracy (Count 10). As demonstrated below, discovery of new evidence and the preclusion of certain evidence and testimony at trial requires this Court either dismiss the charges or grant a new trial.

## II.    STATEMENT OF FACTS

### a.    Physical Evidence of Lerma's Involvement

The evidence relating to Lerma's involvement was primarily based upon the testimony of cooperators. The paltry physical evidence offered as corroboration to the cooperator testimony—only one piece of which purports to directly involve Lerma in the Mexican Mafia--is the following:

#### i.    Agent Talamantez' Testimony—Jpay and Recorded Call

Agent Talamantez testified about **JPay records** (Exhibit 350, attached as Exhibit A) for Mr. Lerma from Pelican Bay State Prison (RT3:88-93)[1]. Exhibit 350 was introduced by the government as evidence that Cheryl Perez and her daughter put money on Mr. Lerma's JPay account (approximately $700 over 4 year period). The government argued this was proof that Cheryl Perez was Mr. Lerma's "secretary" for the Mexican Mafia.

Talamantez also testified that during his investigation he listened to a **recorded call**, **Exhibit 215** (transcript of the call, Exhibit 215a, is attached

---

[1] Reporters Transcripts, day 3, pages 88-89.

here as Exhibit B). The call and transcript were admitted into evidence. The government attempted (and at one point did elicit) numerous times to elicit from Agent Talamantez that when Cheryl Perez (Castaneda, CC) and Seferino Gonzalez (SG) mention "brother" they are referring to Lerma. There were many objections regarding this testimony. At one point after the defense's continued objection as lacking foundation, the court held a sidebar and asked the government "is there anywhere in the…any of the transcripts where Ms. Perez – or Mr. Gonzalez… identifies Lerma as the brother?" (RT3:238:7-13) The government responded, "*It's only in code. What we have is obviously the JPEG* [presumably JPay] *records. We have everything else – the 12th Street and all that. They talk about "he would be giving up the keys" and everything like that. But hearing the actual name, no."* (RT:238:14-18) The court then ruled that the government could not elicit testimony from Agent Talamantez that "brother" meant Lerma.  The government's response to this Court's inquiry is instructive in that it shows how weak the evidence against Mr. Lerma is. The government's argument is circular; physically thin; and lacks reference to any physical evidence (other than the JPay) because there isn't any evidence.

The government's argument that Lerma was the Mexican Mafia "brother" Cheryl Perez was working for was further vitiated by the testimony of JM. JM testified that when Cheryl Perez referred to Lerma as her brother, he thought she meant her biological brother. (RT 12:116)

### ii. Letters to and From Lerma Located at Cheryl Perez' Home

The government moved into evidence (through the testimony of Detective Daniel Watkins (RT6:44-45), letters written by Michael Lerma and Cheryl Perez, located during the search of Cheryl Perez' home (Exhibits 359, 360 and 361).  Copies of these letters/exhibits are attached here as Exhibit C.

Detective Watkins testified that he did not know that Lerma was related to Cheryl Perez, he did not know that she was the aunt of Mr. Lerma's children (RT 6:65). It is clear the agents did not know they were related until the trial. The discovery included reports which alleged to interpret the "coded" language of these letters, such as the word "family" meant the Mexican Mafia. The government wisely did not attempt to argue the letters were coded once they understood the familial relationship. Yet, the government continued to argue that the documents proved that Cheryl Perez was taxing on behalf of Michael Lerma.

Virgina Gutierrez testified that she is Mr. Lerma's sister. She testified that Lerma was married to Cynthia, Cheryl Perez's sister; that Lerma and Cynthia had two children together, Trina and Michael jr. She testified Cheryl Perez was Lerma's ex-sister-in-law and that Cheryl was the maternal aunt to Lerma's two children.

### iii. Roll Call—ML Testimony

The "roll call" that ML allegedly obtained from Arthur Estrada "Turi" was litigated pretrial. This Court noted in it's tentative, "**the Government has done very little to demonstrate [appropriate/legal] this admissibility, as the discrepancy as to author remains and the chain of custody is yet uncertain.**" Little changed during trial.

ML testified he was a shot-caller for the Mexican Mafia. In that capacity he was given and or copied a list of Mexican Mafia members, that he termed, a "roll call". ML testified that he mailed things to "known members of the Mexican Mafia" by using a list of names he called a "roll call", and the names were numbered (RT6:118:4-16). ML further testified he got the names from Turi (who was a member), that he wrote them all down and took them home with him. The roll call had 150 names on it, and he used it to forward mail on behalf of the Mexican Mafia. (RT6:118:17-25; 119:1-7) ML was shown

Exhibit 163 on direct and stated that he recognized it and stated he wrote it. He was asked, "Q: All four pages? A: Yeah." (RT6:120:5-25; 122:1-7) ML is then led by the prosecution and shown Exhibit 168.

Q: Do you recognize 168?

A: Yes, sir.

Q: As what?

A: The roll calls that I wrote.

And then the prosecution asks again.

Q: Does this (Ex 168) include the roll call that you wrote?

A: Yes, sir.

Q: Does this also include the roll call that Turi gave you?

A: Yes.

(RT6:159:13-25; 160:1-11)

ML testified he was instructed by Turi to make a copy of the list so he could help Turi out by forwarding mail when he got released. ((RT:128:14-25) The jury was shown the roll call and it was passed around. It was also placed on monitor.

On cross, ML stated he wrote the roll call around March 2011. (RT6:247:15-22) In his first proffer session he acknowledged that he was asked about the Mexican Mafia, and the Mexican Mafia members he knew. He never mentioned the roll call, nor Lerma. In his second proffer on March 24, 2022, a few months later, he again never mentioned this roll call and this is the first time he mentions Lerma only after being specifically asked about Lerma by the agents. (RT6:248:7-25; 249:1-10) In the third proffer, September 29, 2023, again never mentioned the roll call. In the fourth proffer session on October 20, 2023, even though in every proffer session the agents are asking about the Mexican Mafia, ML again did not mention the roll call. Apparently because he "forgot all about that roll call" and because "it's not a

get-out-of-jail-free card." ML did not mention the roll call until five proffer sessions and 2 years later. (RT6:249-250)

Self testified on 2-27-25 at approximately 3:57 pm that it was his position that Mike Lerma is a member of the Mexican Mafia because of this roll call. "I have seen a roster of Mexican Mafia members that was written by a Mexican Mafia shot-caller in a way to correspond with Mexican Mafia related business that only Mexican Mafia members were on. Included their name, their gang or city they are from as well as their CDC number."[2]

This roll call or kite, is the only physical evidence that identifies Mr. Lerma as a "member".

### b. Testimonial Evidence of Lerma's Involvement

The testimony from the cooperators was essentially the same. At trial they testified that Lerma was involved in drug sales at MDC and ordered discipline.

#### i. Ryan Tawa

Ryan Tawa had several proffer sessions and desperately wanted to cooperate and wanted to provide information the government would find useful (he was facing a mandatory minimum sentence of 15 year and a USSG recommended sentence of 19 ½ years (RT 10:15-16). He proffered three times, but the proffers "didn't work" (RT 10:24:1-3). He was unsuccessful in obtaining a cooperation agreement. In those proffers (the first proffer was on July 31, 2019), he discussed what he knew about drug dealing and the Mexican Mafia and gave information regarding drug dealer Dodger and Mexican Mafia members Cricket and Wizard (although he was housed with Lerma on the 9th floor and then on the 6th floor). He never mentioned Lerma's name. He never mentions Mr. Lerma until a year after SB's death (2 years after his first

---

[2] The final transcripts of Detective Self have not been prepared. This was taken from the Realtime Unedited Transcript for the 27th of February, 2025.

proffer), and only after being specifically asked about him by Agent Talamantez. (RT10: 21-38). Tawa states at trial that he personally bought drugs from Lerma, but does not have any transaction numbers or documents to provide like he had for Wizard and Dodger. He knows this is evidence, knows to keep it, but there simply isn't any for Lerma, just his statement for the first time during trial (RT 10:39-40).

### ii. ML

ML testified about the "roll call". Additionally he testified that he sold drugs and committed discipline on behalf of Lerma. ML gave many conflicting statements about his involvement with Lerma.

### iii. JJ

JJ testified that he talked rarely with Lerma but found Lerma to be a pretty intelligent guy, they talked about finances. (RT 10:107.) 3-4 days prior to SB's death, he claims to have overheard a conversation between SB and Lerma. He heard Lerma say "You need to take care of this. You are not going to make it through this time. There is nothing I can do for you." (RT 10:116.)

### iv. AJ

AJ testified he knew Lerma from 6N at MDC. He testified that he saw Lerma and co-defendant's beat up a guy in Mr. Lerma's cell (RT 11:165-166). On June 28th, 2020, he said after he saw Squeaks, Swifty, and Popeye leave SB's cell, he saw Lerma walk over and try to open the door to SB's cell, but did not open the door. The window was covered by a brown cloth. (RT 11:177-178).

### v. RM

RM did not offer any testimony about Mike Lerma.

### vi. JM

JM testified he met Cheryl Perez in 2012 and taxed areas of Pomona for her. He believed Cheryl Perez was sending the "tax" money to Mr. Lerma, because said she was sending it (RT 12:126:12-23). He never observed her

sending money to Lerma, "she just told us she was doing it." (RT: 13:54:18-25;
55:1-2)  JM also testified that Mr. Lerma was the leader of the Hispanic
inmates on 6N at MDC, that Lerma was to "make sure everything was
controlled in the unit." (RT 12:162:13-20). He said he purchased drugs from
Swifty and Lerma (RT 12:164), but Lerma never gave him drugs personally,
Swifty gave the drugs to him, but he asked Lerma (RT 13:61:1-6). He testified
he and Scooby were stabbed for drug debts. He said he was stabbed by four
people, including Lerma (RT 12:168-169). He stated that while in the SHU,
although he was on A range and Lerma was on B range, Lerma passed a
message, "told me to stay strong." (RT 12:230).

JM testified that after he returned to his cell, he saw that his cellie, SB,
was stabbed. He said he gave him CPR by putting SB's shirt on his mouth and
breathed into his mouth and pushed on his chest. There were no blood splatters
nor DNA evidence offered into evidence.

## III.    NEWLY DISCOVERED EVIDENCE

### a. Document on Public Intelligence Site

At some point after the trial, while the jury was deliberating, counsel
located a document on the internet:
*//efaidnbmnnnibpcajpcglclefindmkaj/https://info.publicintelligence.net/CA-
MexicanMafia.pdf* (A copy is attached as Exhibit D).[3]  The document
appeared to be some sort of official document listing members of the Mexican
Mafia, their locations, and their prison numbers.  The document states it was
created in 2011, and that the photos were provided by the "IGI's from Pelican
Bay State Prison, California State Prison—Corcoran and San Quentin."[4] As

---

[3] https://publicintelligence.net/about/  The website states that Public Intelligence was created in 2009 and is an
international, collaborative research project that wishes to defend the public's right to access information.
[4] IGI appears to refer to Institutional Gang Investigator within the Department of Corrections,
https://www.cdcr.ca.gov/insidecdcr/2020/02/24/cdcr-anti-gang-efforts-foil-mexican-mafias-csp-los-angeles-county-
plans/

stated in counsel's attached declaration, counsel believed it looked almost
identical to the "rollcall" that witness Landeros said Turi had either given to
him or copied from him.

### b. Arthur Estrada "Turi"

Later sometime in early August 2025, counsel looked at the document
from Public Intelligence, Exhibit D, again. Counsel ran the CDCR number for
Estrada through the CDCR locator. The locator showed Arthur Estrada as
housed in Pelican Bay since 2004. Therefore counsel determined that Turi,
Arthur Estrada, was alive and currently housed in Pelican Bay Prison.

As stated in the Declaration, counsel went through the process of
getting authorization for a legal call with Mr. Estrada. The call occurred on
September 3, 2025, at 10:00 am. Due to the protective orders in this case, in
an abundance of caution, Counsel did not mention the name of ML, or
monikers Smokey, or Broomstick.  Mr. Estrada confirmed that he was Arthur
Estrada and his nickname was Turi. He was in Corcoran during 2011-2012,
and he was in the SHU. He was housed alone without a roommate. He said
he was given yard time, but when on the yard, he was in a cage alone. There
were other SHU inmates on the yard, but only those on your SHU tier and all
were in separate cages. No one from general population was on the yard
when those from the SHU were on the yard. He was asked if he had any
recollection of the following:

1. Q: Did you ever possess a list with over 100 names of all the
Members of the Mexican Mafia?  A: NO. He stated he would never
possess nor write such a list as it would be against EME rules, "I am
old school, you never write down members names, you memorize only."
"I know there are some newer members who might do things
differently, but even they would not write any such list."

2.  Q: In 2011 through 2012 did you keep records of Members locations and or CDC or Fed Reg numbers?  A: "No. I once had a couple of CDC numbers in my property. I got busted for having that and was sent to the SHU. The CDC used that (having those numbers) against me to validate me as a Member, and I have been in the SHU ever since. I would never write down any CDC numbers and give them to someone else, I wouldn't do that to someone."

3. Q: Did you ever while out on the yard at Corcoran give a list with Member names, locations and prison numbers, to anyone to copy? A: "No. I would never make or have a list like that."

4.  Q: Did you ever verbally give anyone, while out of the Yard, a list of the Members and their location and numbers? A: No.

5.  Q: Did you ever give anyone such a list through the vents or toilets while at Corcoran? A: "No. That would be crazy. No one would ever give that information over any vent". Also, "no one would give that information to a soldier". "All of this is just not going to happen." The only list he ever remembers having or seeing that contained Member names was a list of a few names of members who were no longer "good". "I immediately flushed it."

6.  Q: Did you ever give anyone or tell anyone to assign a number to members and then use the number to send things to that numbered member?  A: "No, never."

The many conflicting statements of ML regarding this rollcall; the fact that it is remarkably similar to the document located on the internet from Public Intelligence; and, the contrary statements from Arthur Estrada, make it clear that witness ML lied during his testimony.

c.  Daniel Navarro

1   Daniel Navarro signed a declaration (the declaration is attached to
2   Defendant Carlos Gonzalez' Rule 33 Motion). He is an inmate at MDC-LA.
3   During the trial in this matter he was in the SHU on C range. He met Slim
4   there, and Slim told him that he was a member of the "Green Light Gang",
5   and that he was second in command of the gang. He said he received kites
6   from Slim where Slim said he took out his cellmate while having a bad trip
7   by strangling him. He states that Slim wrote that he was testifying against
8   inmates charged with the murder of his cellmate because he wanted to get
9   less time and because they did him wrong so he's doing them wrong. He got
10  the impression that Slim was intimidated by these individuals. Slim wrote
11  that he wanted Navarro to join the green light gang. In one of the kites Slim
12  asked him for advice on the best strategy for his testimony. Slim
13  complimented Navarro for his legal knowledge and thought he would be a
14  "strong upgrade" to the Green Light Gang. Navarro said Player, G, Bad Boy
15  and Creeper passed the kites to him.

### d.  Johnny Macias

17  Johnny Macias's declaration (also attached to Carlos Gonzalez' Rule 33
18  Motion) states his nickname is "Player" and he was housed in C Range of the
19  SHU at MDC-LA with Jose Martinez. Jose Martinez (Slim) talked all the
20  time. He heard Slim confess to killing his cellmate, Steve Bencom, by
21  stabbing him in the eye and heart. Further he heard Slim confess to hating
22  Lerma and bragging that he was going to pin the murder on Lerma and was
23  going to do whatever it took to take Lerma down. During the trial Slim would
24  say negative comments about Lerma's and the co-defendant's appearance.
25  Slim wanted him to join the "Green Light Gang." Slim gave him kites to pass
26  to Daniel Navarro. He describes Daniel Navarro as a "legal beagle." He
27  describes Navarro as kind and always giving inspiration to others. He
28  describes Martinez as always bragging and a weasel.

1

2 IV.   WITNESSES SCOOBY, LT. LAND, DEVAULT, and TOLBERT

3        a.  Scooby (Francisco Ruiz)

4        In order to counter the scientific evidence, the government relied on lies

5 and fake emotion from the cooperators. JM's credibility is crucial for the

6 government because the scientific evidence leads to one conclusion, JM was

7 SB's killer because he was the only one who had access during the crucial

8 time period.

9        At trial, JM testified that he and Scooby got "disciplined" for using

10 drugs and drug debts. He painted a gruesome picture and said he and Scooby

11 were disciplined by getting stabbed. He said he saw Scooby get stabbed 16

12 times (RT: 13:78-79).

13       Scooby was interviewed by the defense. Scooby would have testified

14 that the only time he was ever involved in any sort of discipline with Jose

15 Martinez ("Slim") was when Slim stole a watch (not the convenient story of

16 drug debt to fit the government's theory). Scooby said he did not know the

17 watch was stolen and traded drugs with Slim for the watch. Later he found

18 out (while wearing the watch) that it was another inmate's watch and that it

19 had been stolen. He said he was told he was to make sure anything he buys is

20 not stolen. He stated he was never stabbed, let alone 16 times. When he was

21 interviewed, he jumped up and lifted his shirt to show that there were no

22 stab wounds.

23       Scooby was lawfully ordered by this court pursuant to a Writ of Habeas

24 Corpus ad Tesificandum to testify as a witness in this case[5]. However, the

25 Los Angeles Sheriff's Department refused to produce Scooby. USMS Shaton

26 McDaniel informed the clerk and counsel via email, stating, "I wanted to

27

28

---

[5] Scooby Writ of Habeas Corpus ad Testificandum including Declaration is attached as Exhibit E.

provide you the status of this writ. This writ was denied by LASD as this inmate has scheduled court dates. He will not be available for testimony." Counsel tried multiple times to obtain cooperation from the LA County District Attorney and the LASD to secure Scooby's presence (See Doc. 1694, Motion for Judical Notice). In Document 1694, defense counsel for Lerma requested to call USMS Shaton McDaniel to testify regarding the status of the Writ to have Scooby testify or read the status of the writ into evidence. The court denied counsel's request. Leaving JM's testimony without the contrary testimony of Scooby is unfair and left the jury with false testimony.

### b. Lt. Land

 The government elicited testimony from JM that after the murder of SB, while in the SHU, Lerma passed JM messages, telling him to stay strong. (RT 12:230) JM testified that although he was on A range and Lerma was on B range, Lerma passed messages.

Lt. Billy Land was in charge of the SHU. He was called to testify by Counsel Richard Lasting about what JM said when his property was searched at the SHU.

Counsel for Lerma requested to ask Lt. Land a few questions to describe the SHU. The court denied counsel's request. (RT: 14: 264-268)[6]

The testimony of Lt. Land was important because it would show that Jose Martinez was lying. It is impossible to pass messages from different ranges in the SHU. They are separated by cement walls and steel doors.

### c. Witness Devault Refusing to Comply with Court's Order

Counsel for Lerma filed a Writ of Habeas Corpus ad Testificandum for Mr. Lamont Devault to be brought from Soledad State Prison to testify in this

---

[6] Defendant Lerma filed a Motion to Recall Lt. Land to Testify Regarding the SHU Layout. The government filed an Opposition and Defendant Lerma filed a reply. They were filed under seal.

case[7]. Mr. Davault was important regarding the credibility of AJ and JJ. They are black inmates like Mr. Devault. It was his opinion, and the reputation amongst the black inmates, that AJ and JJ were liars and would do anything to get out of custody, that they "would sell information" and "would sell their mothers to get out." He also had information about his co-defendant, SB. He noted that he was always stressing about getting drugs in MDC. He never knew him to be stressing about drug debts, only about getting heroin for his habit.

The court issued the writ. During trial, on March 5th, Shaton McDaniel from the USMS informed counsel for Lerma and the CRD for this Court that Mr. Devault "refused to allow the deputies to pick him up from his state facility."[8]

Mid-trial, counsel for Lerma was at a loss as to how to get the witness to follow this court's order.

A new trial would allow Lerma to obtain this witness. Without this witness the jury was precluded from hearing vital reputation and opinion testimony regarding the character of these two cooperators.

### d.  Alfonso Tolbert

Lerma filed a Writ of Habeas Corpus ad Testificandum for witness Alfonso Tolbert. He was brought to MDC from Arizona on this writ. Lerma filed a motion in support of calling witness Tolbert (Doc. 1695). The government's theory in this case was that Cheryl Perez was the "secretary" for a Mexican Mafia member, that member being Mr. Lerma. Mr. Tolbert was a trustee and had interactions with Cheryl Perez and Mike Lerma. Cheryl Perez told Tolbert that she was Lerma's wife. He said she was demanding and bossy, and always wanted extra things from his cart.  Sometime later,

---

[7] Copy of Writ attached as Exhibit F.
[8] Copy of email attached at Exhibit G.

Tolbert met Lerma and told him that he had met his wife, Cheryl.  He noted that Lerma became visibly angry, shook his head, and stated, "She's not my wife. Stay away from her, she is bad news."

The court erroneously excluded this witness. The evidence was offered for a non-hearsay purpose as they were offered not for the truth, but to show the effect on the listener. This is not the response one would expect from a "member" when hearing about his "secretary".

## V.    LEGAL ARUGMENT

### a.  Rule 29

The Due Process Clause of the Fourteenth Amendment protects an accused in a criminal case against conviction except upon proof beyond a reasonable doubt. *In re Winship*, 397 U.S. 358 (1970). In reviewing a sufficiency of evidence claim pursuant to Rule 29, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virgina*, 444 U.S. 307, 319 (1979). Under this standard, a defendant need not show that there is "no evidence" to support the jury's verdict. *See id.* at 312-13, 320 (rejecting "no evidence" rule of *Thompson v. Louisville*, 362 U.S. 199 (1960)). To the contrary, the government "must present substantial evidence as to each element of the offense from which a jury could find the accused guilty beyond a reasonable doubt." *Brown v. Davis*, 752 F.2d 1142, 1145 (6th Cir. 1985) (internal citation omitted). Where the evidence is at least as indicative of innocence as guilt, the Court must direct a verdict of acquittal. *United States v. Berger*, 224 F.3d 107, 116 (2nd Cir. 2000); The "evidence is insufficient to support a verdict where mere speculation, rather than reasonable inference, supports the government's case." *United States v. McGaha*, N.D. California,

No. CR 15-0126 WHA, citing *United States v. Nevils*, 598 F.3d 1158, 1167 (9th
Cir. 2010).

Based upon the above and the motions of co-defendants, this court
should find that the government failed to present sufficient evidence for the
charges pursuant to Rule 29. Aside from the alleged "roll call", the physical
evidence offered (the Jpay records, phone call, and letters between Lerma
and Cheryl Perez) is subject to two reasonable interpretations and more
likely favors an innocent interpretation. Cheryl Perez put money on Lerma's
books because she was the maternal Aunt of his two children. There is zero
evidence that Lerma knew or was ever informed of what Cheryl Perez was
doing and zero evidence that he gave his approval. The government's
response to this Court's question whether there was any evidence elsewhere
where Cheryl Perez refers to Lerma as the brother she is working for is
instructive: "*It's only in code. What we have is obviously the JPEG
[presumably JPay] records. We have everything else – the 12th Street and all
that. They talk about "he would be giving up the keys" and everything like
that. But hearing the actual name, no.*" (RT:238:14-18) This sums up the
evidence against Mr. Lerma.

The final piece of physical evidence, the "roll call", is obviously fake. It
is clear from the many inconsistencies of ML, especially regarding the "roll
call", and the statements of Arthur Estrada, that ML either copied or had
someone else copy the document from the PI site. It is clear ML lied. This
court should discard entirely the testimony of ML.

The testimony of JM should be completely discarded based upon the
newly discovered evidence and precluded evidence. His testimony was
completely self-serving; concocted to protect himself.

The testimony of RT was clearly made up after repeated attempts at
cooperation had failed. He took the bait from the questioning of Agent

Talamantez and ran with it, securing his release. It should be discarded entirely.

The testimony of AJ and JJ should be similarly discarded. AJ is a "serial" cooperator (as demonstrated in his *Massiah* hearing), who clearly knows how to work the system in his favor. According to Lamont Devault both AJ and JJ are liars and would say anything, even sell their own mothers, if it would mean they could get out of custody.

The evidence is insufficient. This court should grant Mr. Lerma's Rule 29.

### b. Rule 33

Rule 33 has a different standard than Rule 29. In Rule 29, the evidence is viewed in the light most favorable to the government. In contrast, in Rule 33 motions for new trial, "The district court need not view the evidence in the light most favorable to the verdict; it may weigh the evidence and in so doing evaluate for itself the credibility of witnesses.'" *United States v. Kellington*, 217 F.3d 1084, 1095 (9th Cir. 2000). Rule 33 of the Federal Rules of Criminal Procedure authorizes the Court "upon the defendant's motion, [to] vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). Under Fed. R. Crim. P. 33, the Court may vacate the judgment and grant a new trial in the interest of justice if the weight of the evidence does not support the jury's verdict. In considering the weight of the evidence, the Court "may act as a thirteenth juror, assessing the credibility of witnesses and the weight of the evidence." *United States v. Hughes*, 505 F.3d 578, 592 (6th Cir. 2007). "A district court's power to grant a motion for a new trial is much broader than its power to grant a motion for judgment of acquittal... **Our role is limited to determining whether the district court clearly and manifestly abused its discretion**. *United States v. Inzuna*, 638

F.3d 1006, 1026, (9th Cir. 2009), citing *United States v. Alston*, 974 F.2d 1206, 1211-12 (9th Cir. 1992) (Emphasis Added.)

 *United States v. Berry*, 624 F.3d 1031, 1042 (9th Cir. 2010) outlines a five-part test governing motions for new trial based on newly discovered evidence. The evidence must be newly discovered; the defendant must show they exercised due diligence; the evidence is not merely cumulative or solely impeaching; it must be material; the evidence must be significant so that it would probably result in an acquittal. The defendant bears the burden of demonstrating due diligence as to why the evidence was not discovered before or during trial. If the defendant knew about the possibility of the evidence before trial but failed to pursue it, the motion fails. While the standard is high, it is focused on reasonable diligence given the circumstances. Defendant must demonstrate he undertook a good-faith effort.

 In *Berry*, the evidence did not demonstrate that the witness committed perjury at the trial. *Id.* at 1043. The evidence here demonstrates that witnesses ML and JM committed perjury at trial.

 The interests of justice require this Court grant a motion for new trial. The paltry physical evidence; the witness testimony that was precluded due to others failing to comply with this Court's orders to transport; the Court's rulings preventing witness testimony; AND, the discovery of new evidence requires this Court use it's discretion to grant a new trial.

Dated: September 22, 2025    Respectfully Submitted,

         /s/ Marri Derby
         Marri Derby
         Joel Furman
         **Attorneys for Michael Lerma**

### DECLARATION OF MARRI DERBY

I, Marri Derby, declare:

1. I am an attorney licensed to practice law in the State of California and the Ninth Circuit. I was appointed to represent Defendant Lerma pursuant to the Criminal Justice Act.

2. While the jury was out on this matter, I was researching something (I do not remember what) about the Mexican Mafia on the internet. I saw the Public Intelligence site and clicked on it.

   //efaidnbmnnnibpcajpcglclefindmkaj/https://info.publicintelligence.net/CA-MexicanMafia.pdf

3. The document that is contained in Exhibit D was the only document contained on this Public Intelligence link. It looked very much like ML's "roll call" was copied from this document.

4. Later, in the beginning of August, as I was working on this motion, I looked again at the Public Intelligence document and noticed that the CDCR numbers were not redacted.  I decided to see if the CDCR numbers were correct, to see if they would link to the correct name in the CDCR inmate locator. When I inserted the number for Arthur Estrada, Turi, it showed that he was housed in Pelican Bay State Prison since 2004.

5. I was very surprised because we were under the assumption that Arthur Estada was deceased. We are not sure how we came to believe this. It might have come from a misreading of Agent Talamantez' timeline (he notes that Arthur Estrada's brother is deceased). Regardless, we honestly believed he was deceased and noted this in Lerma's Motion in Limine to Exclude Jail Writings and Testimony about Jail Writings filed January 7, 2025 under seal.

On page 3, lines 14-15 it states, "Estrada is not alleged to be part of the instant conspiracy, and is also deceased."

6.  I then contacted Pelican Bay and confirmed Arthur Estrada was there. I called and sent emails and ultimately was able to set up a legal phone call with Estrada. Prior to the date of the call, I sent Estrada a letter introducing myself and told him I had some questions and hoped he would agree to speak to me.

7.  On September 3rd, I received a call from Pelican Bay State Prison. They connected me to Estrada. I spoke to him and then connected attorney Joel Furman to the call.  I asked him the questions outlined in this motion and he responded as stated in this motion.


    I declare the above to the best of my knowledge and belief that the foregoing is true and correct and that this declaration is executed at Laguna Beach, California, on January 16, 2025.

                                        */s/Marri Derby*
                                        Marri Derby

                                        Attorney for Michael Lerma

1
2
3
4
5
6
7
8
9
10
11
12

# EXHIBIT A

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1     <u>DECLARATION OF CUSTODIAN CERTIFYING BUSINESS RECORD</u>

2     I, RENE Ramos     (*name*), hereby declare as follows:

3     1.   I am a duly authorized custodian of records for

4     CDCR     (*name of business or entity*) (the

5     "Business Entity").  In that capacity, I am knowledgeable about the

6     matters set forth herein and am qualified and authorized to make this

7     declaration.

8     a.   My job title/position is: Senior Agent.

9     b.   I have been employed in this capacity for 25 1/2 Years

10         (*duration*), and by the Business Entity for CDCR

11         (*duration*).

12    c.   My job duties are: CONDUCT MAJOR CRIME INVESTIGATIONS

13

14

15         d.   I am knowledgeable about the matters set forth herein

16    and the relevant record-keeping practices of the Business Entity

17    based upon the following (*check all that apply*):

18         ☒   Training

19         ☒   Familiarity with relevant policy/policies

20         ☒   Hands-on experience

21         ☐   Supervision of one or more others with hands-on

22             experience

23         ☐   Other (*describe*):

24

25    2.   Attached hereto or enclosed herewith are ☐ originals ☒

26    true and correct duplicates (*check one of the boxes*) of a record or

27    records of a regularly conducted activity of the Business Entity

28    named above.

                                1

LS_019566

3.    I certify that the attached record(s):

a.    was/were made at or near the time of the occurrence of the matters set forth therein;

b.    was/were made by, or from information transmitted by, a person with knowledge of those matters;

c.    was/were kept in the course of the regularly conducted activity of the Business Entity;

d.    was/were made by and in the course of the regularly conducted activity as a regular practice; and

e.    if not original records, are exact duplicates of original records.


I declare under penalty of perjury that the foregoing is true and correct.  This declaration is executed on 12.20.24 (*date document was signed*) and executed at LOS ANGELES COUNTY (*place document was signed*).

_____
(*signature*)

_____
RENE RAMOS
(*typed or printed name*)

2



## Inmate Summary

| Inmate Information | |
|---|---|
| Inmate ID: | C38374 |
| Name: | MICHAEL LERMA |
| Location: | KVSP |
| Facility: | California Department of Corrections & Rehabilitation |

| Deposits | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Date | Location | TransID | CustomerID | Customer | Amount | Type | Batch | IP Address |
| 11/08/2015 | KVSP | 51818564 | 13268361 | Anita L Rico | $10.00 | Credit Card | 93556 | 71.189.160.208 |
| 09/13/2015 | COR | 49847421 | 13268361 | Anita L Rico | $10.00 | Credit Card | 93500 | 71.189.160.208 |
| 09/09/2015 | COR | 49724484 | 14663956 | JACKIE PEREZ | $200.00 | MONEYGRAM | 93496 | |
| 08/26/2015 | COR | 49202006 | 9546702 | trisha salas | $100.00 | Credit Card | 93482 | 172.56.16.249 |
| 08/13/2015 | COR | 48840607 | 14417882 | JACKIE PEREZ | $300.00 | MONEYGRAM | 93469 | |
| 08/07/2015 | COR | 48653866 | 13268361 | Anita L Rico | $10.00 | Credit Card | 93463 | 71.189.160.208 |
| 08/06/2015 | COR | 48606786 | 14026340 | Kimberly r nick | $50.00 | Credit Card | 93462 | 66.193.196.226 |
| 07/12/2015 | COR | 47814477 | 13268361 | Anita L Rico | $10.00 | Credit Card | 93437 | 71.189.160.208 |
| 07/01/2015 | COR | 47427101 | 14026340 | Kimberly r nick | $50.00 | Credit Card | 93426 | 216.4.56.143 |
| 06/25/2015 | COR | 47257210 | 13268361 | Anita L Rico | $10.00 | Credit Card | 93420 | 71.189.160.208 |
| 06/14/2015 | COR | 46926036 | 9546702 | trisha salas | $100.00 | Credit Card | 93409 | 172.56.38.130 |
| 06/09/2015 | COR | 46796475 | 12072849 | Theresa Guevara | $50.00 | Credit Card | 93405 | 172.5.140.73 |
| 06/04/2015 | COR | 46622529 | 13798323 | Rosie R Lerma | $250.00 | Credit Card | 93399 | 99.99.66.73 |
| 05/28/2015 | COR | 46349604 | 13268361 | Anita L Rico | $20.00 | Credit Card | 93393 | 71.189.160.208 |
| 05/28/2015 | COR | 46337353 | 13725347 | Mysha Hernandez | $200.00 | Credit Card | 93393 | 23.240.181.243 |
| 05/09/2015 | COR | 45809486 | 7607298 | Jesus Pimentel | $50.00 | Credit Card | 93374 | 12.20.180.82 |
| 04/15/2015 | PSP | 45016171 | 7188204 | Brenda velasquez | $30.00 | Credit Card | 93350 | 172.56.31.240 |
| 04/05/2015 | PSP | 44710047 | 13268361 | Anita L Rico | $10.00 | Credit Card | 93340 | 71.189.160.208 |
| 03/26/2015 | PSP | 44355498 | 7607298 | Jesus Pimentel | $30.00 | Credit Card | 93330 | 201.142.179.145 |
| 01/19/2015 | PSP | 42141477 | 7607298 | Jesus Pimentel | $100.00 | Credit Card | 93264 | 166.170.51.252 |
| 12/24/2014 | PSP | 41399397 | 9546702 | trisha salas | $200.00 | Credit Card | 93238 | 172.56.41.67 |
| 11/26/2014 | PSP | 40513487 | 9978222 | Denise Morales | $100.00 | Credit Card | 93210 | 207.166.80.166 |
| 10/30/2014 | PSP | 39695273 | 9978222 | Denise Morales | $100.00 | Credit Card | 93183 | 207.166.80.166 |
| 10/14/2014 | PSP | 39294839 | 9546702 | trisha salas | $150.00 | Credit Card | 93167 | 172.56.41.159 |
| 05/01/2014 | PSP | 34486795 | 9978222 | Denise Morales | $100.00 | Credit Card | 93002 | 198.228.208.93 |
| 04/03/2014 | PSP | 33735410 | 9323497 | Fatima Renteria | $50.00 | Credit Card | 92973 | 99.44.218.21 |
| 03/31/2014 | PSP | 33643975 | 9978222 | Denise Morales | $100.00 | Credit Card | 92971 | 166.137.177.235 |
| 12/26/2013 | PSP | 30923965 | 9126265 | Nataly Gonzales | $190.00 | Credit Card | 92875 | 198.228.211.86 |
| 10/21/2013 | PSP | 29162345 | 8497838 | allyssa c chavez | $50.00 | Credit Card | 92809 | 10.30.50.79 |
| 09/11/2012 | PSP | 20998699 | 2352985 | cheryl perez | $100.00 | Credit Card | 92404 | 96.251.198.47 |
| 02/08/2012 | PSP | 17323798 | 2352985 | cheryl perez | $120.00 | Credit Card | 92188 | |

DT_000354

LS_019568

| 02/06/2012 | PSP | 17295118 | 5008577 | ANDRES HOPE | $93.05 | MONEYGRAM | 92186 | |
| 12/09/2011 | PSP | 16312304 | 2013219 | amalia ortiz | $50.00 | Credit Card | 92127 | 76.171.226.242 |
| 08/23/2011 | PSP | 14696578 | 4204917 | Theresa Chavez | $50.00 | Credit Card | 92019 | |
| 06/17/2011 | PSP | 13804964 | 3979003 | TRACY RICHARDS | $195.00 | ACE | 91952 | |
| 04/07/2011 | PSP | 12855879 | 3707320 | VICKY MAGANA | $100.00 | ACE | 91882 | |
| 03/14/2011 | PSP | 12526204 | 3609353 | TRACY RICHARDS | $195.00 | ACE | 91858 | |
| 02/16/2011 | PSP | 12135272 | 3491098 | Karla Dalley | $93.05 | Credit Card | 91832 | |
| 12/25/2010 | PSP | 11437201 | 3226956 | Robert A Legard | $50.00 | Credit Card | 91779 | 76.175.102.131 |
| 11/22/2010 | PSP | 11004013 | 3156122 | ALICE LANDERS | $195.00 | ACE | 91746 | |
| 07/24/2010 | PSP | 9577407 | 2732188 | CHERYL PEREZ | $80.00 | MONEYGRAM | 91625 | |
| 06/12/2010 | PSP | 9151211 | 2610448 | JUDY GARCIA MARQUEZ. | $195.00 | ACE | 91583 | |
| 04/18/2009 | PSP | 5083276 | 1438828 | maria rea | $200.00 | Credit Card | 91165 | 76.91.80.38 |

| Media Transfers (from customer to inmate account) | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Date | Location | TransID | CustomerID | Customer | Amount | Type | Media Type | IP Address |

| Media Transfers (from inmate account to prepaid account) | | | | |
|---|---|---|---|---|
| Date | Location | TransID | Amount | Type |

| Letters Received | | | | | |
|---|---|---|---|---|---|
| Date | Letter ID | Location | CustomerID | Customer | IP Address |

| Letters Sent | | | | | |
|---|---|---|---|---|---|
| Date | Customer | CustomerID | Letter ID | Location | IP Address |

| Scheduled calls | | | | | |
|---|---|---|---|---|---|
| Call ID | Customer Name | DATE | TIME | Call duration in minutes | Kiosk ID |

| Other calls | | | | | | |
|---|---|---|---|---|---|---|
| Call ID | Customer Name | DATE | TIME | Call duration in minutes | Kiosk ID | Status |

| Inbound Support Tickets | | |
|---|---|---|
| LETTER ID | ORIGINAL DATE | MESSAGE |

| Outbound Support Tickets | | |
|---|---|---|
| LETTER ID | ORIGINAL DATE | MESSAGE |

DT_000355

LS_019569

| Phone Transaction | | | | | | | |
|---|---|---|---|---|---|---|---|
| PHONE TRANSFER ID | DATE | CUSTOMER FIRST NAME | CUSTOMER LAST NAME | CUSTOMER ID | PHONE NUMBER | AMOUNT | TYPE |

©2010 JPay, Inc.

Questions? Call us at (800) 574-5729

DT_000356

1
2
3
4
5
6
7
8
9
10
11
12

# EXHIBIT B

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**VERBATIM TRANSCRIPTION**

**Participants**                                    **Abbreviations**

SG:        Seferino Gonzalez                Primary language:    (standard) English
CC         Cheryl Castaneda                 *Secondary Language*: (italics) *Spanish*
                                            UI:                  Unintelligible
                                            OV:                  Overlapping Voice


SG:              What did Dopey say?

DT_033768

EXHIBIT 215a
Page 1 of 3

G215a

CC:         What happen?

SG:         Que deho Dopey?   (What did Dopey say?)

CC:         Oh um I guess he told somebody else had told him to call me and stuff.  But
            anyway um huh.

SG:         Huh?

CC:         Oh tell him I'll call him back, I'm on the phone.  Um that's him on the phone.  Um
            what's you call it.  Um if he just wanted to know if he is do over there, like what
            is happening over here.

SG:         Yah

CC:         And I told him, that that's good it will help me out.  And she knows who that guy
            that Vato Grumpy is.  I guess he has the ah, he has it to his neighborhood right
            now.

SG:         Yah?

CC:         Yah that's what he said.  You know and I guess they had a meeting.  They want
            they want some toys.

SG:         They want some toys.

CC:         I don't know.  I can't get none of those.

SG:         Yah yah we can't.

CC:         I'm not sure I want to do that, hell no. Ugh ugh You never know what this mother
            fucker  going to strip the fuck up, you know.  I have told them, you know um, the
            one that who is, she told me he um, what the fuck was his name. What um oh
            there was an older Vato there with him.  He fucking looked all chunt. He knows
            you and your brother.

SG:         Who?  Shorty?

CC:         Um, who?

SG:         Shorty?

CC:         Is that the name I told you the other day?

SG:         No you told me Gru Grumpy.

███████

DT_033769

CC:          Ok, no no no no.  Ahh,

SG:          Oh Big Head.

CC:          Dopey no not B-nut.

SG:          Dopey.

CC:          Dopey and um.

SG:          Diablo.

CC:          There was another guy and um, there's another guy forgot what his name was.  It
             slip my mind right now.  He's like, ohhhh those are your boys, well yah yah
             they're good.  Am like, Yah, you know what?  They take care of everything over
             here.  I said, you know, that's what you know.  I gave you guys the respect not to
             go over there.  You know that's what I respect in return.  But he's like, alright you
             know but you know shit fluctuates. I know how it goes, you know.  He's like
             alright you know.  He put my name in there for your brother.  I'm like, well you
             know, I'll talk to you about it later.  I said, I got so much shit going on right now,
             UI.

SG:          Look am I tell you right now  I got no fucking UI coz your brother would have
             not gave up anything, if he didn't trust them those fools UI.

CC:          Yah

SG:          You know me; he would gave it to Nato.

CC:          Yah, yah

SG:          Knowing he didn't give it to him, you know.

CC:          Yah, yah

[End of transcription]

DT_033770

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT C



LS_013383

EXHIBIT 359
Page 1 of 2



Michael Lerma
C-38374, D-3-113
P.O. Box 7500
Crescent City, Calif.
95532

PELICAN BAY STATE PRISON
5905 Lake Earl Dr
Crescent City CA 95532

FIRST CLASS

Purple Martin

Cheryl Perez
260 E. LaVerne Ave.
Pomona, Calif.
91767

PELICAN BAY S.H.U.
UNIT D-3

9176782349

LS_013390

EXHIBIT 359
Page 2 of 2



1.

Sept. 18, 2013.

Say Trisha,

Hello, well yesterday I received your letter and I want to thank you for writing, and say your welcome for the Birthday card. ain't no thing, I keep you in mind because it's also Danny's Birthday too. So I send you a card too.

How are you, your Baby, mom and all of our family doing? I hope that my letter find you and all of our loved ones in the best of health, in happy spirits and safe. As for myself I'm okay. just here as usual relaxing and taking it easy.

Let me get to answering your letter from Sept 5, 2013. Don't trip on not writing to me. I know that you're busy with your baby and family. the only one. I do trip on is your mom. the reasons are because I love her a lot, I care for her a lot and have know her for about 40 years. She means the world to me and has stuck-by me all of these years. plus the past two years have been really bad and hard for her and you too. you lost your Dad and your Sister Sonia both were very hard on your mom and you too. So I try my best to love her and stay by her side the best that I can and hope that she's okay. She will always have me and you too K. As for myself. all is okay up this way. waiting to hear from the courts on n

CONFIDENTIAL PRISON PHOTOCOPY 09/18/13



2.

habeas corpus and waiting to hear from your mom. ☺ oh do me a Very Big favor I just sent your mom a form for a T.V. and I asked her to look for some christmas cards for me and a 2014 Calendar. but! now I need her or you to please call walkenhorst's for me K? here's a form with their phone no. 1(800) 660-9255 call them and ask them to mail you and me an "Appliance Catalog" Its important to get one. because it has the radios we are now allowed to get and buy. So please get one K? and it looks like we will be able to get two (2) packages a year now. and other new stuff which I'll let you guys know about later on. if they won't send me an "Appliance Catalog" make sure they mail you one and then you can mail it to me okay? thank you! and help. ☺ Lastly ask her about the copies of my picture oh and the pictures of her. I asked your mom for? tease her and tell her sexy pictures of herself! ☺

All right then Trisha. All for now. You take care, write soon, give everyone my love and hellos for me. I love you, I miss you and enjoy life!

with Love Always your Tio,
Michael Lerma

PELICAN BAY STATE PRISON SECURITY HOUSING UNIT D-3

Nov. 10, 2012

Dear Cheri,

Hello, just dropping in on you with a few lines to check on you and see how you're doing, and holding up. but first let me ask how are you, the Kids, Grandkids and all of our family doing? I hope that my brief letter finds you and all of our loved ones in the best of health and in happy holiday spirits. As for myself I'm A-okay.

Well before I forget. Yesterday. I did get the magazines thru you ordered for me. All 9 of them. Thank you so much for that. I appreciate you helping me out. Right now I'm good on everything. I just got the money that you sent. So I could use the 2013 calendar. If you please!? And since it's christmas time I do need (20.) twenty christmas cards please? other than that I'm all good. Oh just to remind you. You can only mail me five (5) christmas cards in one envelope at a time K. but, you can mail me (4) four manila envelopes at one time K? thank you! You know that I Love You.

So how are things going with you and Vi's family? the thing to keep in mind is that people forget all of the Love you and Vi had, the Kids and all of the years you were together. they

PELICAN BAY S.H.U.
UNIT D-3

2.



were quick to forget that and they let greed and selfishness control their actions. don't stoop down to their level of pettiness. be above them. you have your kids, his memories, your family and me always right? ignore them and more forewards in life! Anyway have you talked to Jen lately? how about my Becky. I really would love a few pictures of her please? tell her they are for christmas a big surprise for me! how was work at the fair this year? I see you didn't find me any single woman to write. what's up with that? are you keeping me all to yourself? find out if Irma got the portraits of Nana and Danny that I sent her and I since she doesn't write to me. I'm my give everybody my love and hello for me K.

all right then cheri. I'll bring this one to an end here. you take care, I love you, I miss you! give the kids my love and best for me, write soon, don't work to hard and enjoy life!

with Love Always,
Michael Jerma

PELICAN BAY S.H.U.
UNIT D-3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT D



1
2
3
4
5
6
7
8
9
10
11
12

# EXHIBIT E

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Marri Derby–California State Bar #107209
Law Offices of Marri Derby
23 Corporate Plaza, Ste. 150
Newport Beach, CA 92660
marri@marriderbylaw.com
Phone: (949) 478-5084
Fax: (949) 608-7034

Joel M. Furman State Bar #282222
Law Office of Joel Furman
1432 Edinger Ave., Ste. 20
Tustin, CA 92760
joelfurmanlaw@gmail.com
Phone: (949)887-2397

Attorneys for Defendant Michael Lerma

United States District Court

For the Central District of California

| | |
|---|---|
| United States of America,<br><br>              Plaintiff,<br><br>     v.<br><br>Michael Lerma, et al.,<br><br>              Defendant. | Case No 18-cr-172-GW<br><br>DECLARATION OF COUNSEL IN SUPPORT OF APPLICATION FOR WRIT OF HABEAS CORPUS AD TESTIFICANDUM<br><br>**[IN CAMERA]** |

## DECLARATION OF MARRI DERBY

I, Marri Derby, declare:

1. I am a lawyer licensed by the State of California and admitted to practice before the Ninth Circuit. I have been appointed to represent Mr. Lerma in this matter.

2. Cooperating witnesses (CW's) in this case, including Jo    Ma       (the cellmate of SB who is the victim of the homicide), state that Lerma ordered discipline and had co-defendants carry it out. They state that Lerma ordered "Scooby" to be stabbed by co-defendants.

3. I was informed of the following: On February 3, 2025, Defense Investigator Marcelo Sabbatella and attorney Joel Furman met with Francisco Ruiz at LACJ Men's Central. Mr. Sabbatella and Mr. Furman asked Mr. Ruiz about his ever being stabbed while at MDC and whether he was ever assaulted by any of the defendants in this case. Mr. Ruiz said he was never stabbed or assaulted by any of the defendants in this case. He lifted his shirt and showed them his torso and his arms. There were no visible scars or wounds. Mr. Sabbatella explained to Mr. Ruiz what J    Ma       reported, including "Scooby got it bad…got stabbed four different times and beat up" over a stolen watch. Mr. Ruiz explained that J    M        stole a watch and traded it with Mr. Ruiz. Mr. Ruiz did not know the watch had been stolen. Mr. Ruiz began wearing the watch and was asked to take it off and turn it over. It had a "B" etched into the back and was determined to be the watch stolen from a black inmate at MDC named Bird. Mr. Ruiz said he explained what had happened. He noted that stealing in custody is not condoned and you get disciplined for doing it. He said Jo    Ma       was disciplined by the Surenos (because Jose is a Sureno). Mr. Ruiz said

1
2
3
4

he was verbally disciplined by MS 13 (as that is his gang affiliation) for not paying proper attention to "when obtaining property." He also admitted to drinking and doing "Spice" with Jo    M    while at MDC.

5
6
7
8
9
10
11
12

4. These statements are important to the defense because the defense theory is that the CW's stories are not true, they just repeat rumors they have heard in order to benefit from their cooperation. Jo    Ma    lied to make himself look better, saying Scooby stole the watch. Additionally, the defense includes the fact that Jo    Ma    is a drug addict and used whatever he could get his hands on while at MDC, which was typically Spice. Spice is a drug that often induces psychosis, and he was under the influence of Spice when he killed SB.

13
14

5. I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

15
16

Executed on the 9th day of February, 2025, at Newport Beach, CA.

17
18
19

_____ /s/Marri Derby _____
Marri Derby
Attorney for Michael Lerma

20
21
22
23
24
25
26
27
28

---

1
2
3
4
5
6
7
8
9
10
11
12

# EXHIBIT F

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Marri Derby–California State Bar #107209
Law Offices of Marri Derby
23 Corporate Plaza, Ste. 150
Newport Beach, CA 92660
marri@marriderbylaw.com
Phone: (949) 478-5084
Fax: (949) 608-7034

Joel M. Furman State Bar #282222
Law Office of Joel Furman
1432 Edinger Ave., Ste. 20
Tustin, CA 92760
joelfurmanlaw@gmail.com
Phone: (949)887-2397

Attorneys for Defendant Michael Lerma

United States District Court

For the Central District of California

| United States of America, | ) | Case No 18-cr-172-GW |
|---|---|---|
| Plaintiff, | ) | DECLARATION OF COUNSEL IN SUPPORT OF APPLICATION FOR WRIT OF HABEAS CORPUS AD TESTIFICANDUM – LD Sr. |
| v. | ) | |
| Michael Lerma, et al., | ) | **[IN CAMERA]** |
| Defendant. | ) | |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## DECLARATION OF MARRI DERBY

I, Marri Derby, declare:

1.  I am a lawyer licensed by the State of California and admitted to
    practice before the Ninth Circuit. I have been appointed to represent Mr.
    Lerma in this matter.

2.  A few weeks ago, Defense Investigator Marcelo Sabbatella and I met
    with Mr. Lamont Devault Jr. at Soledad CTF. Mr. Devault told us many
    things, including, he was housed on the 6th floor at the time of Mr.
    Bencom's murder. He said Mr. Bencom was his "crimey" (co-defendant)
    on his underlying case at Centinela state prison. He liked Mr. Bencom.
    He noticed that Mr. Bencom was very stressed and had a personality
    change while at MDC. He said he never realized Mr. Bencom was a
    heroin addict while in state prison because apparently he was able to
    get heroin easily there. At MDC he was constantly stressing about
    getting drugs. It changed his personality, he was always "stressing". He
    also said that A        Ja     n "Fish" was a liar and would do anything
    to get out of custody. It was very easy to tell that Jackson was a
    cooperator because he was always listening in to everyone's business
    and asking questions. He said that J       V      r and Jo      Jo
    were "always crying about the time they facing, saying waaa waaa, I
    can't do this much time." "I knew they would try to sell information". He
    said you can't believe anything they say because they "would sell their
    mothers to get out." He also said anything they say about Mexican
    Mafia politics is a lie because each race never discusses their races
    politics. If you are doing business, then you only talk about that.
    Otherwise you talk about the weather or the news or whatever else, but

not race/prison politics. Surenos definitely keep their business to themselves.

3.  These statements are important to the defense because the government's theory is that Mr. Bencom was stressed about a debt to Mr. Lerma. He also is important regarding how the races interact in prison, specifically MDC. He is also important regarding the credibility of An      Ja      , J     V      and Jo      J      , who are all black inmates like Mr. Devault.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on the 30th day of January, 2025, at Newport Beach, CA.

_/s/Marri Derby_
Marri Derby
Attorney for Michael Lerma

1
2
3
4
5
6
7
8
9
10
11
12
13

# EXHIBIT G

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Marri Derby–California State Bar #107209
Law Offices of Marri Derby
23 Corporate Plaza, Ste. 150
Newport Beach, CA 92660
marri@marriderbylaw.com
Phone: (949) 478-5084
Fax: (949) 608-7034

Joel M. Furman State Bar #282222
Law Office of Joel Furman
1432 Edinger Ave., Ste. 20
Tustin, CA 92760
joelfurmanlaw@gmail.com
Phone: (949)887-2397

Attorneys for Defendant Michael Lerma

United States District Court

For the Central District of California

| United States of America, | Case No 18-cr-172-GW |
|---|---|
| Plaintiff, | DECLARATION OF COUNSEL IN SUPPORT OF APPLICATION FOR WRIT OF HABEAS CORPUS AD TESTIFICANDUM |
| v. | |
| Michael Lerma, et al., | **[IN CAMERA]** |
| Defendant. | |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## DECLARATION OF MARRI DERBY

I, Marri Derby, declare:

1.  I am a lawyer licensed by the State of California and admitted to practice before the Ninth Circuit. I have been appointed to represent Mr. Lerma in this matter.

2.  Cooperating witnesses (CW's) in this case, including J    M        (the cellmate of SB who is the victim of the homicide), state that Lerma ordered discipline and had co-defendants carry it out. They state that Lerma ordered "Scooby" to be stabbed by co-defendants.

3.  I was informed of the following: On February 3, 2025, Defense Investigator Marcelo Sabbatella and attorney Joel Furman met with Francisco Ruiz at LACJ Men's Central. Mr. Sabbatella and Mr. Furman asked Mr. Ruiz about his ever being stabbed while at MDC and whether he was ever assaulted by any of the defendants in this case. Mr. Ruiz said he was never stabbed or assaulted by any of the defendants in this case. He lifted his shirt and showed them his torso and his arms. There were no visible scars or wounds. Mr. Sabbatella explained to Mr. Ruiz what J    M        reported, including "Scooby got it bad…got stabbed four different times and beat up" over a stolen watch. Mr. Ruiz explained that Jose Martinez stole a watch and traded it with Mr. Ruiz. Mr. Ruiz did not know the watch had been stolen. Mr. Ruiz began wearing the watch and was asked to take it off and turn it over. It had a "B" etched into the back and was determined to be the watch stolen from a black inmate at MDC named Bird. Mr. Ruiz said he explained what had happened. He noted that stealing in custody is not condoned and you get disciplined for doing it. He said J    Ma      was disciplined by the Surenos (because Jose is a Sureno). Mr. Ruiz said

he was verbally disciplined by MS 13 (as that is his gang affiliation) for not paying proper attention to "when obtaining property." He also admitted to drinking and doing "Spice" with J    M    while at MDC.

4. These statements are important to the defense because the defense theory is that the CW's stories are not true, they just repeat rumors they have heard in order to benefit from their cooperation. J    M    lied to make himself look better, saying Scooby stole the watch. Additionally, the defense includes the fact that J    Ma    is a drug addict and used whatever he could get his hands on while at MDC, which was typically Spice. Spice is a drug that often induces psychosis, and he was under the influence of Spice when he killed SB.

5. I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on the 9th day of February, 2025, at Newport Beach, CA.


    _____/s/Marri Derby_____
    Marri Derby
    Attorney for Michael Lerma

mail                                                           **arri Derby <marribarton@gmail.com>**

_____T, Lamont
3 messages

**McDaniel, Shaton (USMS)** <Shaton.McDaniel2@usdoj.gov>                    Wed, Mar 5, 2025 at 10:00 AM
To: "Javier_Gonzalez@cacd.uscourts.gov" <javier_gonzalez@cacd.uscourts.gov>
Cc: marri derby <marri@marriderbylaw.com>

Good morning,


Please be advised that Mr. Devault refused again this morning to allow USMS deputies to pick him up from his state facility.


Respectfully,


**Shaton L. McDaniel, Investigative Analyst (IA)**

Department of Justice (DOJ)

United States Marshals Service (USMS)

Central District of California – C/CA - Los Angeles

Work iPhone: (213) 670-3172

Email: **shaton.mcdaniel2@usdoj.gov**


**Investigative Analyst email: usms-cca-los-inv.analyst@usdoj.gov**

**Detention Management email:  cac.dmu@usdoj.gov**

        **mail: cac-cellblock@usdoj.gov**

        **ation  email: cac.courtop@usdoj.gov**