Marri Derby, State Bar Number 107209
Law Office of Marri Derby, APC
23 Corporate Plaza, Ste. 150
Newport Beach, CA 92660
marri@marriderbylaw.com
Phone: (949) 478-5084
Fax: (949) 608-7034

Joel Furman, State Bar Number 282222
Law Office of Joel Furman
1432 Edinger Ave. Ste. 240
Tustin, CA 92780
Joelfurmanlaw@gmail.com
Phone: (949) 887-2397

Attorneys for Defendant Michael Lerma

United States District Court
For The Central District of California

| | |
|---|---|
| United States of America, | Case No 18 CR 172-GW |
| Plaintiff, | |
| v. | **DEFENDANT LERMA'S REPLY TO GOVERNMENT'S OPPOSITION TO MOTION FOR ACQUITTAL and NEW TRIAL PURSUANT TO FED. RULES 29 AND 33; DECLARATION** |
| Michael Lerma, | |
| Defendant. | |

DEFENDANT MICHAEL LERMA, by and through counsels of record Marri Derby and Joel Furman, hereby replies to the government's opposition to his Rule 29 and Rule 33 motions.

This Reply is based on the Memorandum of Points and Authorities, Declaration, and any other evidence that may be presented at the hearing.

Dated: November 24 , 2025        Respectfully Submitted,


             /s/ Marri Derby
Marri Derby
Joel Furman
Attorneys for Michael Lerma

# MEMORANDUM OF POINTS AND AUTHORITIES

## 1. INTRODUCTION

Rather than addressing the substance of the new evidence, the government relies on conclusory assertions, speculative credibility attacks, and distinguishable precedent. The cases cited by the government are factually inapposite and aid the defense. Because the newly discovered evidence includes direct third-party confession testimony strongly exculpating Lerma, the interests of justice require a new trial—or, at a minimum, an evidentiary hearing to assess witness credibility.

## 2. THE GOVERNMENT'S ARGUMENT THAT THE NEW EVIDENCE LACKS CREDIBILITY FAILS

The government relies on *United States v. Diggs*, 649 F.2d 731, 740 (9th Cir. 1981) and *United States v. Panza*, 612 F.2d 432, 441 (9th. Cir. 1979), (Doc. 1821 pages 35-36.), asserting that alleged credibility problems justify rejecting the new evidence without a hearing. Both cases are factually distinct and do not support the government's position.

In *United States v. Diggs*, 649 F.2d 731, the alleged new evidence consisted of a post-trial affidavit from a co-defendant who had previously declined to testify. The Ninth Circuit held that such evidence is not newly discovered. This is a far cry from the newly discovered evidence here. The witnesses here—Navarro, Macias, and Estrada—are not co-defendants, and defense counsel had no knowledge of their existence during trial.

The new evidence in *United States v. Panza*, 612 F.2d 432, also came from a co-defendant. Panza testified at his trial, but on cross examination, refused to identify a critical witness out of fear of reprisal. After trial, Panza revealed the name of the witness. The co-defendant then moved for a new trial based on newly discovered evidence. The district court ruled this was not

newly discovered and that it was cumulative. The Ninth Circuit expressed hesitation about rejecting new evidence and emphasized the trial court's role in assessing credibility. *Id*. at 441. Far from supporting denial of a hearing, *Panza* reinforces that credibility disputes are appropriately resolved by live testimony.

The government's claim that the newly discovered evidence "lacks credibility" rests solely on reference to Navarro's criminal history (Doc 1821: 36 n. 14.) There is zero evidence of biases or incentives of Navarro, Macias, or Estrada. The government identifies no evidence of motive, bias, benefit, or factual basis suggesting fabrication. The only factual argument the government makes that the witnesses are not credible is that Navarro has a conviction for sex offenses (Fn. 14, page 36). None of the witnesses has testified before this Court, and credibility cannot be assessed through speculation. A third-party confession must be heard and evaluated by the trial court. Evidentiary hearings are ordered in cases "typically involving allegations of…third party confessions." *United States v. Hamilton*, 559 F.2d 1370, 1373 (5th Cir. 1977).

"*Refusing to grant a hearing has, however, been held an abuse of discretion where a third party has confessed to the crime for which the defendant was convicted. In* Casias v. United States*, 337 F.2d 354 (10th Cir. 1964), it is said that: 'No one can doubt that a confession by another party to the crime for which the petitioner has been tried and convicted, if discovered after conviction, would be grounds for a new trial. The integrity of the confession is a matter within the province of the trial Court . . .. We hold only that the petitioner is entitled to be heard on his motion, and the case is accordingly remanded for that purpose.' (at 356)*" Lebron v. United States Secretary of Air Force,* 392 F. Supp. 219, 223-224, (Dist. Court, SD New York 1975).

The government argument against Mr. Estrada is that his statement is unsworn. Due to the lack of funding for CJA attorneys and service providers, no funding was available for an investigator or counsel to go to Pelican Bay and obtain a signed declaration from Mr. Estrada. (See Declaration of Marri Derby attached to this reply.) Defense counsel did submit a sworn declaration as to what Mr. Estrada stated to defense counsel (attached to Defendant Lerma's Rule 33 motion). This is sufficient justification for this Court to grant a Writ of Habeas Corpus ad Testificandum for a hearing to test the credibility of Estrada.

### 3. THE GOVERNMENT'S ARUGEMENT THAT THE EVIDENCE WAS NOT NEWLY DISCOVERED NOR DILIGENTLY PURSUED IS UNSUPPORTED

#### 3a. Evidence was Newly Discovered

The government argues the new evidence is not newly discovered. (Doc 1821, page 36). This first prong is easily satisfied. "All of the evidence upon which the defendant relies meet the first test of newness in discovery. At the time of the trial, defendant and his lawyer were not aware of any of the five items of evidence." *People v. LoPesto* 156 NW 2d 586; 9 Mich. App. 318, 324-325 (1967); *United States v. Gordon*, 246 F. Supp. 522, 524 (D.D.C.1965). Here, none of the defense counsel were aware of these witnesses before or during the trial.

#### 3b. The Evidence was Diligently Obtained

The government then circularly argues because there was an opportunity to discover the new evidence, it was not diligently obtained. How can the defense interview witnesses it did not know existed? Once the defense became aware of the witnesses, the defense took the steps necessary to locate and interview the witnesses.

The government argues that since Mr. Estrada was alive, defense counsel lacked diligence. As stated in Lerma's Rule 33 motion, it is clear the defense believed Mr. Estrada was deceased and stated so in defendant Lerma's motion in limine filed on January 7, 2025, page 3. The government never disabused the defense of this belief. The government either likely believed the same thing, or, failed to inform the defense that Estrada was indeed alive.

The government cites *United States v. Harrington*, 410 F. 3d 598 (9th Circuit 2005) as support for their diligence argument. In *Harrington* the defendant acted pro se and argued that testimony from the preliminary hearing and photographs of the crime scene and a street map show that one of the officers lied and thus the court should grant a new trial. The court ruled the photographs and street map could have been obtained anytime and the defendant was present at the preliminary hearing, thus the evidence was not new and reflected a lack of due diligence on Harrington's part. *Id.* at 601. Hardly the case here.

*United States v. Gordon*, 246 F. supp. 522 (D.D.C. 1965) is instructive. The question was whether defense counsel acted with sufficient diligence in locating prior convictions for impeachment. Defense counsel did not use all the various names of the witness and did not issue a subpoena to the Police Department for records under the various names then known to the defense. Although during trial the Court granted a 15-minute recess for further investigation, the defense failed to run the names during the recess. The court stated, *"I am of the opinion that the highest degree of diligence would have required this procedure, but that is not the criterion. It is simply "diligence," which I assume means ordinary diligence…There is no suggestion that there was any deliberate effort to make a scanty investigation with a view of using something that might be found later as a basis for a new trial if*

*conviction resulted. On the contrary, the attorney for defendant acted in good faith throughout…"* The court found sufficient diligence. *Id.* at 525. Here, all counsel acted in good faith and cannot be accused of "scantily investigating" the case. Additionally, the discovery in this case was **massive**. Up to February 2025, approximately 415.41 GB of discovery was produced including 92,451 pages of documents; 1,283 hours of audio recordings; 158.28 hours of video footage; and 140.33 GB of native files (spreadsheets, emails, text files, digital images, program/system files). **During trial** (trial commenced February 25, 2025), between March 1-28, 2025, an **additional** 4.21 GB of discovery was produced including 9,873 pages of documents; and 150 native files.[1] Defense counsel's task of preparing for trial each day and absorbing new discovery was a herculean task. Once the witnesses became known to the defense, appropriate actions were taken to investigate.

### 3c. The New Evidence is More than Impeachment and a New Trial Would Likely Result in an Acquittal

The government incorrectly asserts that the evidence is "at best impeachment." It is not. The government relies upon *United States v. Davis,* 960 F.2d 820 (9th Cir. 1992). In Davis, days after the trial it became known that one of the main witnesses (an undercover officer) had been involved in stealing confiscated drug money. The appellate court ruled that assuming all of the officer's testimony was deemed incredible and not considered, there was sufficient remaining evidence to sustain the convictions (which included the evidence of defendant's paying of over a million dollars for cocaine). *"We conclude that even if the impeachment evidence completely destroyed Duran's testimony, there remains sufficient evidence…" Davis* at 827. Two witnesses heard JM confess to the crime defendant Lerma is convicted of. It

---

[1] Figures are taken from the discovery management firm reports filed with this Court.

1 has always been the defense position that JM is the only person who had
2 access to Bencom at the time of the murder. This confession is a far cry from
3 simply impeaching JM with a prior crime. The newly discovered evidence
4 supports and corroborates the defense position that JM murdered Bencom.
5 Here, JM was the star witness for the government. The evidence remaining
6 after JM's testimony is "completely destroyed" is insufficient to sustain a
7 conviction.

8     The government argues that JM and ML were "vigorously cross-
9 examined" and the jury still returned a guilty verdict. This argument adds
10 nothing new. The jury did not hear that JM confessed to killing Bencom to at
11 least two different people and that he hated defendants, especially Lerma.
12 The jury did not hear that the only piece of physical evidence against Lerma
13 (the "roll call"), which the government's expert (Self) relied upon, was made
14 up.

15     The government fails to recognize that one damaging piece of evidence
16 can make the entire house of cards fall. It is difficult to show that someone is
17 a liar, especially someone like JM and ML. Both had a lot of time and help in
18 preparation and planning their testimony. The chart from the internet and
19 the testimony of Estrada, damages not only ML's credibility, but all the
20 cooperators' credibility. It would have the spillover effect of corroborating the
21 defense arguments that "snitches" will do anything and say anything to help
22 themselves.

### 3d. JM's and ML's Testimony is NOT Corroborated by Other Evidence

24     Last, the government asserts JM's and ML's testimony was
25 corroborated by other evidence (Doc. 1821, page 39).

26       "…[T]he jury heard overwhelming evidence of defendant Lerma's
27     involvement in these acts, including jail calls implicitly referring to
28     him, correspondence between him and his associates, testimony from

CW-1 [ML] and the acts he did on behalf of defendant Lerma, expert testimony regarding the Mexican Mafia, percipient witnesses and surveillance footage that showed defendant Lerma walking towards Bencom's jail cell along with the other defendants, medical examiner testimony confirming Bencom's time of death could have occurred when defendants had access to Bencom, and confessions by defendant Lerma's co-defendants regarding their involvement in Bencom's murder or the build-up to it." (Page 39, lines 5-15)

This alleged "corroboration" is fluff. As stated in defendant Lerma's Rule 33 motion, Exhibit 215 of the jail call between Cheryl Perez and Seferino Gonzales is wishful thinking on behalf of the prosecution. Nowhere in Exhibit 215 or in ANY of the calls does Cheryl Perez ever identify Lerma as the "brother" (RT:3:238). Lerma is not heard in any calls, nor is his name ever mentioned. The "correspondence between him and his associates" is nothing more than letters between family members. There was no testimony that the letters were coded or contained information regarding the Mexican Mafia. Testimony from ML (CW-1) that he did business on behalf of Lerma is not corroborated by any physical evidence (even though there should be if it were true) except for the "roll call" that we now know is a fake. "Expert testimony regarding the Mexican Mafia" contained no evidence linking Lerma but for the fake "roll call". The only "percipient witnesses" were the snitches, all of whom were motivated to lie. The "confessions of defendant Lerma's co-defendants" was again derived only from testimony of the snitches.

The most telling is the lack of ANY physical evidence corroborating the snitches. Why is there nothing to back up what the snitches say? Because they lied. The government argues as corroboration the "ledger" seen by CW2 (Doc 1821 fn 2, page 10). Where is this ledger? BOP staff regularly search

cells for contraband. Where is this pink ledger? Only in the imagination of the snitch. Where is the money trail that Lerma allegedly made by being the drug dealing king of MDC? Where did this money go? Where is the evidence of Lerma receiving or sending money? Where is the cloth that JM put over Bencom's mouth when he gave him CPR? Where is the blood from when JM pounded on Bencom's chest right after the alleged murder? Where is the DNA evidence of Bencom's blood on JM or any of the defendants?

The government argues the surveillance footage is corroboration. First, the video is a cut and paste montage of numerous different clips made to fit the government's theory. It is tangible, physical evidence. However, the surveillance footage shows defendants encouraging Bencom to make pruno, not a murder. JM testified that defendant Sanchez told him to tell Bencom to come by his cell to get the sugar (Dkt. 1717, 206:10-15) The surveillance footage clips show Lerma and co-defendants walking toward the direction of their cells and the cells past their cells (which includes Bencom's cell). Nothing more. When Bencom's cell is searched and photographed, the sugar and candy for pruno is in the cell. The government's sinister adjectives are not evidence ("Lerma lurking from a distance" (Doc. 1821 page 27); "Lerma ultimately zeroed in on cell 619—toward his criminal associates who outnumbered Bencom in his own cell"; the surveillance video "captured the coordinated movements of the victim and the defendants at the time of the victim's death." (Doc. 1821, p. 26)).  The video footage is consistent with the defendants wanting Bencom to make pruno and the government's adjectives are not evidence.

The government argues that Bencom was never seen alive again on camera after he walked back to his cell that afternoon. The government argues this is corroboration. It is not. **No one** was seen back on camera again until the morning unless they were orderlies serving dinner or assigned work

in the kitchen because all inmates were locked down due to Covid. Bencom was not an orderly and did not have a kitchen job. Consequently, he was not seen on camera again until the following morning, as would be expected.

## 4. CONCLUSION

New evidence was discovered post-trial. The evidence is not cumulative on any issue. Additionally, the cumulative effect of the newly discovered witnesses and evidence coupled with the testimony of the witnesses excluded at trial would likely produce a different result on retrial.

This Court *can* grant the Rule 33 motion now based upon the declarations and lack of evidence. *"Because an order directing a new trial leaves the final decision in the hands of the jury, it does not usurp the jury's function…a court of appeals will only rarely reverse a district judge's grant of a defendant's motion for a new trial, and then only in egregious cases."* *United States v. Alston*, 974 F.2d 1206, 1212 (9th Cir. 1992). However, if this Court is not inclined to grant a new trial at this point, it *must* schedule an evidentiary hearing. *United States v. Hamilton*, 559 F.2d 1370, 1373 (5th Cir. 1977).

Dated: November 24, 2025           Respectfully submitted,

/s/Marri Derby
Marri Derby, Joel Furman
Attorneys for Defendant Lerma

## DECLARATION OF COUNSEL

I, Marri Derby, declare:

1. I am an attorney licensed to practice law in the State of California and the Ninth Circuit. I was appointed to represent Defendant Lerma pursuant to the Criminal Justice Act.

2. In August of this year, I obtained the document that contained the same information on ML's roll call. The document had Arthur Estrada's CDCR number unredacted. I subsequently determined he was alive and imprisoned in Pelican Bay State Prison.

3. During this time funding for CJA had been depleted and there were no funds available for attorneys, investigators or other service providers. I had submitted funding requests for an investigator and a paralegal, with no response from CJA. I was willing to continue working with the hope of one day being reimbursed. Our investigator could not as he needed to support his family.

4. Consequently, I could not send an investigator to Pelican Bay to obtain a statement from Mr. Estrada and have him sign it under penalty of perjury witnessed by the investigator.

5. I was not aware of the existence of Mr. Navarro nor Mr. Macias prior to or during the trial in this matter.

  I declare the above to the best of my knowledge and belief is true and correct and that this declaration is executed at Laguna Beach, California, on November 24, 2025

            /s/Marri Derby
            Marri Derby
            Attorney for Michael Lerma